ENGLISH, EXRX. *v.*
JOHNS-MANVILLE SALES CORP. ET AL.

(No. 32859—Decided March 22, 1984.)

Court of Common Pleas of
Cuyahoga County.

Mr. *Peter Brodhead* and Mr. *Donald
P. Traci,* for plaintiff.

Mr. *Parker M. Orr* and Mr. *Haywood
E. McDuffie,* for GAF Corp. and GAF
Bldg. Corp.

Mr. *Philip J. Herman* and Mr. *Jay H.
Salamon,* for Pittsburgh Corning.

Mr. *David Ross,* for Celotex Corp.

Mr. *Thomas A. Dugan* and Mr.
*Richard G. Hardy,* for Nicolet Industries.

Mr. *Thomas R. Frutig,* for Keene
Corp.

Mr. *James Conroy,* for Rock Wool
Mfgr.

Mr. *William P. Farrall,* for Standard
Asbestos.

Ms. *Beth Sebaugh,* for Armstrong
Cork Co.

Mr. *Richard J. DiSantis* and Mr.
*Robert F. Hesser,* for Raybestos-
Manhatten.

Ms. *Barbara J. Arison* and Mr. *Keith
L. Carson,* for Flinkote Co.

Ms. *Carolyn M. Cappel,* for Atlas
Adhesive.

Mr. *Thomas G. Hermann,* Mr. *Mitch-
el B. Axler* and Mr. *L. Lee Boatright,* for
Owens-Corning.

Mr. *L. Edward York,* for Forty-Eight
Insulations.

Mr. *William D. Bonezzi,* for A. W.
Chesteron.

Mr. *Richard J. Di Santis* and Mr. *Ed-
ward J. Flanagan,* for Raymark Indus.

Mr. *Robert G. Quandt* and Ms. *Beth A.
Sebaugh,* for Armstrong World Indus.

JAMES J. MCMONAGLE, J. This case
was commenced by the filing of a com-
plaint by the plaintiff, Virginia F.
English, Executrix of the Estate of
Thomas E. English, against the defen-
dants, Johns-Manville Sales Corporation
et al., on September 17, 1981, and is now
scheduled for trial on April 16, 1984. The
narrow issue presently before this court
involves the interpretation of Civ. R.
26(B)(4) in conjunction with the unique
facts and procedural posture which have
developed in the discovery process.

The plaintiff claims that her decedent
came to his death as a result of pleural
mesothelioma which was proximately
caused by the inhalation of asbestos fibers
which were manufactured and/or dis-
tributed by the various defendants. The
defendants apparently contend that the
cause of death was from an adenocar-
cinoma for which they are not responsi-
ble, and the discovery posture of this case
has focused upon medical experts whom
both parties claim are crucial to the
proper investigation and presentment of
their case.

Pursuant to the rules of discovery,
plaintiff's expert, Dr. Judge, was deposed
by the defendants on February 4, 1984,
and in response to a question involving his
opinion as to who were recognized ex-
perts in diagnosing asbestos-related
diseases, Dr. Judge gave the name of Dr.
Jerome Kleinerman of Mt. Sinai School of

Medicine in New York City. Dr. Kleinerman's activity in this area is well-known to individuals involved in asbestos-associated litigation, but he is not the only expert in this field.

On February 6, 1984, the defendants, through the office of John Travis, an attorney for Keene Corporation, contacted Dr. Kleinerman telephonically and followed with a letter under the same date, stating in pertinent part that "this letter will confirm that you have been retained by the defendants."

On or about February 15, 1984, the plaintiff, through one of her attorneys, Peter Brodhead, also contacted Dr. Kleinerman telephonically, and he also consented to review the plaintiff's medical case. There is no evidence that plaintiff or her attorneys were aware of the previous contact of the defendants with Dr. Kleinerman.

On February 23, 1984, the defendants forwarded the medical records to Dr. Kleinerman, and on March 5, 1984, Dr. Kleinerman advised the plaintiff of his position of apparent conflict.

Defendants contend that Dr. Kleinerman was initially retained by them in anticipation of litigation and, therefore, pursuant to Civ. R. 26(B)(4)(a), the plaintiff may not further consult with nor use the facts known or opinions held by Dr. Kleinerman in any manner whatsoever connected with this litigation.

Because orders on motions filed pursuant to the discovery rules are not considered final and, therefore, appealable, there are very few comments regarding this rule in the Ohio legal literature. Therefore, a brief review may be helpful. Civ. R. 26(B)(4)(a) reads as follows:

"Subject to provisions of subdivision (B)(4)(b) of this rule and Rule 35(B), a party may discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial only upon a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means or upon a showing of other exceptional circumstances indicating that denial of discovery would cause manifest injustice."

The rule is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation. See Advisory Committee Notes to Fed. R. Civ. P. 26(b)(4)(B); *Ager* v. *Jane C. Stormont Hospital & Training School* (C.A. 10, 1980), 622 F. 2d 496, 502. It is important to recognize that Civ. R. 26(B)(4)(a) is trial preparation oriented as opposed to Civ. R. 26(B)(4)(b), which is trial oriented.[1]

Expert witnesses are different from fact witnesses. An expert is consulted because of his education, knowledge and experience in his profession or special line of work. To promote an honest and sincere search for the truth, the parties must be able to conduct their own preparation without being put in fear of jeopardizing their own case if an expert whom they consult may have an opinion adverse to their client's interest. To hold otherwise would only support the contentions of those who claim that our present use of expert witnesses is simply a checkbook trial tactic. It also would add a chilling effect upon an attorney's duty to fully research and investigate his case if any opinions adverse to his client's interest would ultimately have to be turned over to his opponent. The purpose of this rule is not to secrete witnesses or to insulate their opinions from discovery. Its purpose is to foster proper preparation under confidential circumstances which ultimately assist our search for the truth. Only under "exceptional circumstances" will discovery be permitted.[2]

Chief Justice Frank D. Celebrezze of the Ohio Supreme Court, in *Owens* v. *Bell*

---

[1] Civ. R. 35 is not applicable to the type of expert witness being discussed herein.

[2] See 1967 Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for

(1983), 6 Ohio St. 3d 46, 54 (concurring opinion), characterized the effect of the rule in the following manner:

"Other than in those situations covered by these two rules, it would appear that the identity of experts consulted prior to trial but who will not be called as witnesses as well as the findings or opinions of those experts are not subject to discovery by the opposing party."

The Chief Justice's observations are in accord with previous federal decisions regarding Fed. R. 26(b)(4) which is similar to the Ohio rule. In *Ager* v. *Jane C. Stormont Hospital & Training School, supra,* a case which is often cited for a full discussion of the federal rule, that court at 500-501 divided experts into four categories, applying discovery limitations to each:

"(1) Experts a party expects to use at trial. The opponent may learn by interrogatories the names of these trial witnesses and the substance of their testimony but further discovery concerning them can be had only on motion and court order.

"(2) Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial. Except as provided in rule 35 for an examining physician, the facts and opinions of experts in this category can be discovered only on a showing of exceptional circumstances.

"(3) Experts informally consulted in preparation for trial but not retained. No discovery may be had of the names or views of experts in this category.

"(4) Experts whose information was not acquired in preparation for trial. This class, which includes both regular employees of a party not specially employed on the case and also experts who were actors or viewers of the occurrences that gave rise to suit, is not included within Rule 26(b)(4) at all and facts and opinions they have are freely discoverable as with any ordinary witness. [Footnotes omitted].

"Wright & Miller, *Federal Practice and Procedure:* Civil § 2029."

An example of each of the types of experts described above follows:

(1) the ordinary expert witness who ultimately testifies at trial;

(2) experts who may be used initially for exploratory or educational assistance to the attorney;

(3) experts who may be friends or acquaintances whose views may be sought on a golf course or at a cocktail party; and

(4) experts who are merely eye witnesses to an incident giving rise to litigation.

In this case we are concerned with category (2). Dr. Kleinerman was contacted and retained by the defendants on February 6, 1984. Whether or not this was because of the defendants' financial resources, their superior diligence and their more aggressive preparation is irrelevant to the disposition of the narrow issue before this court. The plaintiff's attorney contacted Dr. Kleinerman without knowledge of any relationship he had with the defendant. There is no evidence of any chicanery or methods used which are below the high ethical level of all counsel connected with all of the asbestos litigation. Unfortunately, the expert witness has created the confusion. No one here is attempting to suppress or exclude facts or opinions. Dr. Kleinerman will be available for use as an expert witness by all parties to this litigation.

Therefore, it is ordered that the testimony of Dr. Kleinerman will be subject to discovery by all parties and that his testimony may be used at trial by any party to this litigation.

*Judgment accordingly.*

---

the United States District Courts, 43 F.R.D. 211, at 233-234; see, also, McGlothlin, Some Practical Problems in Proof of Economic, Scientific and Technical Facts (1958), 23 F.R.D. 467.